UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK SHAFFER, | ) |
| Plaintiff, | ) 11 C 970 |
| vs. | ) Judge Feinerman |
| NATIONAL RAILROAD PASSENGER CORPORATION, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Derrick Shaffer brought this diversity action against the National Railroad Passenger Corporation ("Amtrak"), alleging that it terminated his employment in violation of the retaliatory discharge tort established by Illinois common law. Invoking Federal Rule of Civil Procedure 12(b)(6), Amtrak has moved to dismiss the complaint for failure to state a claim. The complaint is dismissed without prejudice.

The well-pleaded facts alleged in the complaint are assumed true on a Rule 12(b)(6) motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Shaffer began working for Amtrak in 2001 and was terminated in 2008. Amtrak claims the termination was for dishonesty, but Shaffer denies any dishonesty and alleges that he was fired in retaliation for making two "workplace, public health and safety complaints" to Amtrak management. The first incident concerned Shaffer's assignment to work at the Brighton Park rail yard; Shaffer believed that he was not qualified to work at that location and, after checking with his union representative, refused to appear. Doc. 1 at ¶ 10(a). The second incident concerned an engine

derailment at Brighton Park; Shaffer told management that an engineer injured in the derailment was not qualified to work that particular assignment. *Id*. at ¶ 10(b).

Illinois is an at-will employment state, meaning that, as a general rule, "an employer may discharge an employee … for any reason or for no reason." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009); *see also Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 940 (7th Cir. 2002). The retaliatory discharge tort carves a "limited and narrow" exception to the general rule. *Turner*, 911 N.E.2d at 374. "To state a valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Ibid.*; *see also Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009); *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 628 (7th Cir. 2009). Amtrak focuses on the third element, arguing that the complaint should be dismissed because it does not identify "a clear mandate of public policy" that was violated by Shaffer's discharge.

To adequately support a retaliatory discharge claim, the public policy invoked by a plaintiff must "strike at the heart of a citizen's social rights, duties, and responsibilities." *Turner*, 911 N.E.2d at 374 (internal quotation marks omitted). Public policy may "be found in the State's constitution and statutes and, when they are silent, in its judicial decisions," *ibid*. (internal quotation marks omitted), and also in federal law, *see Wheeler v. Caterpillar Tractor Co.*, 485 N.E.2d 372, 377 (Ill. 1985); *Brandon*, 277 F.3d at 942-43. "The public policy requirement is not met when only private interests are at stake." *Benders v. Bellows & Bellows*, 515 F.3d 757, 766 (7th Cir. 2008) (internal quotation marks omitted). "Illinois courts have identified two situations in which the 'clear mandate of public policy' standard is met: (1) when an employee is fired for asserting a workers' compensation claim; and (2) when an employee is

fired for refusing to engage in illegal conduct or reporting the illegal conduct of others ('whistle blowing' or 'citizen crime fighting')." *Brandon*, 277 F.3d at 941 (internal quotation marks omitted). "The Illinois Supreme Court has defined 'public policy' only within these limited bounds and thus has consistently sought to restrict the common law tort of retaliatory discharge." *Darchak*, 580 F.3d at 629 (internal quotation marks omitted). Illinois law "does not require the employee to have been correct about the unlawfulness of the [employer] conduct" about which he complained, as long as he "had a good-faith belief that it was unlawful," *Brandon*, 277 F.3d at 941; *see also Benders*, 515 F.3d at 766, and as long as his good-faith belief was "objectively reasonable," *Lang v. Northwestern Univ.*, 472 F.3d 493, 495 (7th Cir. 2006).

To properly plead a retaliatory discharge claim, a plaintiff must articulate the relevant public policy with specificity. The Supreme Court of Illinois emphasized this point numerous times in *Turner*, holding that "[a] broad, general statement of policy is inadequate to justify finding an exception to the general rule of at-will employment"; that "[a]ny effort to evaluate the public policy exception with generalized concepts of fairness and justice" is insufficient; that "unless an employee at will identifies a specific expression of public policy, the employee may be discharged with or without cause"; that "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations"; and that "unless an employee at will identifies a 'specific' expression of public policy, the employee may be discharged at will." 911 N.E.2d at 375-76 (internal quotation marks omitted). *Turner* noted that insufficiently specific "allegations of public policy include 'right to marry' a coworker; 'product safety'; 'promoting quality health care'; and 'the Hippocratic Oath.'" *Id*. at 376 (internal citations omitted). Another insufficiently specific allegation is "the general purpose declaration of the No Child Left Behind Act: 'that all

children have a fair, equal, and significant opportunity to obtain a high-quality education.'" *Darchak*, 580 F.3d at 629. As these examples illustrate, "the mere citation of a constitutional or statutory provision in a complaint will not, by itself, be sufficient to state a cause of action for retaliatory discharge. Rather, an employee must show that the discharge violated the public policy that the cited provision clearly mandates." *Turner*, 911 N.E.2d at 377.

Here, the complaint's allegation regarding public policy states:

> [Shaffer's] December 2007 workplace health and safety complaints … were activities protected by clearly mandated Illinois public policy as embodied by various Illinois and federal statutes and regulations including, but not limited to 49 U.S.C. § 20109, the "Employee Protections" section of the Federal Railroad Safety Act, and mandatory operating safety rules promulgated by the Northeast Operating Rules Advisory Committee of which AMTRAK is a full member.

Doc. 1 at ¶ 16. Shaffer's opposition to Amtrak's motion to dismiss does not rely on the Northeast Operating Rules Advisory Committee's mandatory operating safety rules as a font of public policy, thus forfeiting any such argument. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. We apply that rule where a party fails to develop arguments related to a discrete issue ….") (citations omitted); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995). Instead, Shaffer's opposition brief relies exclusively on the "Employee Protections" provision of the Federal Railroad Safety Act ("FRSA"), which forbids a railroad carrier from discharging an employee for, among other things, "provid[ing] information" to "a person with supervisory authority over the employee" regarding "any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security"; "refus[ing] to violate or assist in the violation

of any Federal law, rule, or regulation relating to railroad safety or security"; "reporting, in good faith, a hazardous safety or security condition"; or "refusing to work when confronted with a hazardous safety or security condition relating to the performance of the employee's duties" under certain circumstances. 49 U.S.C. § 20109(a)-(b). The provision establishes an administrative scheme under which an employee alleging a discharge in violation of these prohibitions may file a complaint with the Secretary of Labor for compensatory damages, punitive damages up to $250,000, reinstatement, attorney fees, and backpay, with the Secretary's decision subject to judicial review. *Id*. § 20109(d)-(e).

Amtrak contends that Illinois law does not recognize a retaliatory discharge claim where, as appears to be the case here, an alternative remedial scheme is available to the discharged employee. In support, Amtrak cites *United States ex rel. Chandler v. Hektoen Inst. for Med. Research*, 35 F. Supp. 2d 1078, 1083 (N.D. Ill. 1999), *Handel v. Belvedere USA Corp.*, 2001 WL 1286842, at *4 (N.D. Ill. Oct. 22, 2001), and *Callozzo v. Office Depot, Inc.*, 1998 WL 111628, at *5 (N.D. Ill. Mar. 6, 1998), for the proposition that a retaliatory discharge claim will not lie if a statutory anti-retaliation provision provides a remedy for the discharge. After those district court decisions were issued, however, the Seventh Circuit held that "even if there is some kind of federal remedy available under" a statutory anti-retaliation provision, "it appears that the Illinois Supreme Court looks at this fact" not as necessarily dispositive, but "as one of many factors in the pragmatic approach toward determining when the tort of retaliatory discharge will lie." *Brandon*, 277 F.3d at 945; *see also Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812, 813 (7th Cir. 2003) ("the availability of a federal remedy does not automatically preclude a state retaliatory-discharge claim"); *Zuccolo v. Hannah Marine Corp.*, 900 N.E.2d 353, 359 (Ill. App. 2008) ("the mere existence of a federal remedy does not preclude a state common-law action for

retaliatory discharge") (citing *Fragassi v. Neiburger*, 646 N.E.2d 315, 317-18 (Ill. App. 1995)). The pertinent question, then, is whether the FRSA's remedial scheme, considered together with other factors, is sufficiently strong to warrant rejecting Shaffer's retaliatory discharge claim in this case. *See Stebbings v. Univ. of Chi.*, 726 N.E.2d 1136, 1141 (Ill. App. 2000) ("a court might even be obligated to dismiss" a common law retaliatory discharge claim if there was already "a statute making [the plaintiff's] firing illegal," as "one of the factors that a court considers in deciding whether to allow a retaliatory discharge claim is the existence of an adequate alternative remedy"); *Emery v. Ne. Ill. Regional Commuter R.R. Corp.*, 2003 WL 22176077, at *6 (N.D. Ill. Sept. 18, 2003) (finding it "unlikely that Illinois courts would extend the narrow tort of retaliatory discharge to encompass a claim … where [the plaintiff] has an adequate alternative remedy" under the anti-retaliation provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq*.).

There is no need to reach that question, at least not at this point in the case, because the complaint founders in another respect. As noted above, to state a retaliatory discharge claim, a plaintiff must allege that he was fired either for asserting a workers' compensation claim or for being a whistleblower. *See Brandon*, 277 F.3d at 941. This case falls in the second category, with Shaffer's theory being that he was "fired for refusing to engage in illegal conduct or reporting the illegal conduct of others." *Ibid*. To properly allege that the "conduct" he reported or in which he refused to engage was "illegal," Shaffer must point to *specific* standards clearly prohibiting that conduct. *See Turner*, 911 N.E.2d at 375-76. In *Turner*, the Illinois Supreme Court's most recent exposition of the retaliatory discharge tort, the plaintiff alleged that he was fired for complaining that his employer, a hospital, endangered patient safety by allowing medical professionals to electronically chart a patient's file at the end of their shift rather than immediately after seeing the patient. *Id*. at 372, 376. The court held that this allegation could

not ground a retaliatory discharge claim because the plaintiff "fail[ed] to recite or even refer to a specific" provision requiring immediate charting. *Id*. at 376. The court explained that the statutory provision cited by the plaintiff, 410 ILCS 50/3, "is only concerned with record confidentiality, rather than record timeliness," and thus does not speak directly to the particular recordkeeping practice about which the plaintiff had complained. *Turner*, 911 N.E.2d at 377; *see also Rabin v. Karlin & Fleisher, LLC*, 945 N.E.2d 681, 689-91 (Ill. App. 2011) (affirming dismissal of retaliatory discharge claim where the plaintiff did not identify any provision prohibiting the billing practices about which he complained). The court added that the public policy of "patient safety," while undoubtedly important, was too "general" to support a retaliatory discharge claim. *Turner*, 911 N.E.2d at 378; *see also Rabin*, 945 N.E.2d at 690-91 ("we are not persuaded that plaintiff's allegation of 'honesty and fidelity' in the legal system satisfies the supreme court's 'narrow definition of public policy' in retaliatory discharge cases") (quoting *Turner*, 911 N.E.2d at 378).

Shaffer's retaliatory discharge claim fails for the same reason. Shaffer's two safety-related complaints concerned Amtrak's assignment of employees to perform work for which they allegedly were unqualified. Doc. 1 at ¶ 10. Yet Shaffer does not identify any specific statute, regulation, or judicial decision addressing that particular railroad safety issue. The lone provision referenced by Shaffer, 49 U.S.C. § 20109, protects whistleblowers from retaliation but does not impose substantive railroad safety standards on its own. Shaffer correctly observes that *Sherman v. Kraft General Foods, Inc.*, 651 N.E.2d 708, 712-13 (Ill. App. 1995), held that a federal whistleblower protection statute can establish the public policy underlying a common law retaliatory discharge claim. That holding, rendered by an intermediate appellate court, does not survive the state supreme court's subsequent decision in *Turner*, at least under the

circumstances of this case.[*] *Turner* focuses attention on the conduct that prompted the employee's whistleblowing, and asks whether a specific statute, regulation, or judicial decision prohibits that conduct. 911 N.E.2d at 374-78. The conduct that prompted Shaffer's whistleblowing was Amtrak's assignment of personnel to tasks for which (according to Shaffer) they were unqualified; under *Turner*, Shaffer must identify a provision or judicial decision addressing and prohibiting that conduct. Section 20109 does not prohibit that conduct or impose any substantive standards governing when and how a railroad can assign employees to particular jobs or locations; instead, it prohibits railroads from retaliating against employees for whistleblowing or for engaging or refusing to engage in certain activities. Thus, § 20109 might support a retaliatory discharge claim where a plaintiff alleges that he was discharged for complaining that his employer punished him or another employee for reporting unsafe working conditions or for refusing to work an unsafe assignment. But § 20109 cannot ground a retaliatory discharge claim where, as here, the employer conduct about which the plaintiff complained (assigning employees to perform tasks for which they are unqualified) is not prohibited by that statute.

To proceed with this case, Shaffer must file an amended complaint identifying a specific statute, regulation, or judicial decision addressing the workplace conduct about which he complained. Only then can Shaffer hope to satisfy *Turner*, which demands such specificity, and only then can he hope to satisfy *Lang v. Northwestern University*, *supra*, which provides that a

---

[*] The appellate court's holding in *Sherman* that "the public policy of protecting the lives and property of the citizens of the State of Illinois as stated in the preamble to the 1970 Illinois Constitution" can ground a retaliatory discharge claim, 651 N.E.2d at 712, also does not survive *Turner*. *See Turner*, 911 N.E.2d at 375 ("An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations.") (internal quotation marks omitted).

retaliatory discharge claim may proceed only if the employee had an "objectively reasonable" belief that the workplace conduct about which he complained was unlawful. 472 F.3d at 495. After all, unless and until Shaffer identifies a specific safety-related provision or judicial decision that Amtrak's personnel-assignment decisions allegedly violated, it is impossible to evaluate whether Shaffer's belief that Amtrak violated that (at this point hypothetical) provision or decision was objectively reasonable.

For theses reasons, the complaint is dismissed under Rule 12(b)(6) for failure to state a claim. The dismissal is without prejudice, and Shaffer is given until November 4, 2011, to file an amended complaint. If an amended complaint is not filed by that date, the court will construe Shaffer's inaction as a decision to stand on his initial complaint and will enter an order dismissing this case with prejudice.

October 17, 2011                                 _____
                                                  United States District Judge